UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
In re:

DANIEL MARKLIN aka DANIEL E. MARKLIN,

                                Debtor.
--------------------------------------------------------------------x
KERIN ENTERPRISES HOLDING COMPANY, LTD.,
as Successor in Interest to MCKINNON DOXSEE
AGENCY, INC. and MILLENNIUM ALLIANCE
GROUP, LLC.,

                               Plaintiff,
      - against -

DANIEL MARKLIN aka DANIEL E. MARKLIN,

                              Defendant.
--------------------------------------------------------------------x

Case No. 8-21-71030-reg

Chapter 7

Adv. Proc. No. 8-21-08136-reg

## <u>DECISION AFTER TRIAL</u>

Before the Court is an adversary proceeding commenced by Kerin Enterprises Holding Company, Ltd. (the "Plaintiff") against Daniel Marklin aka Daniel E. Marklin (the "Debtor" or "Defendant") seeking a finding of non-dischargeability pursuant to 11 U.S.C. §§ 523(a)(4) and/or (a)(6) and denial of the Debtor's discharge under 11 U.S.C. § 727(a)(4)(A).

The Plaintiff's claims are predicated on conduct which was the basis of an action brought by the Debtor's former employer in New York State Supreme Court. The former employer was not successful at the trial level where the Debtor and a co-defendant, Frank Gallina ("Gallina") were found not liable under various causes of action alleging that they had misappropriated certain customer account information from their former employer for their own benefit and provided that information to their prospective employer. On appeal, the Appellate Division reversed the trial court in part, and found the Debtor liable for aiding and abetting Gallina in

Gallina's breach of fiduciary duty to their former employer and found that the Debtor and Gallina had engaged in unfair competition against their former employer.

The Plaintiff is the successor in interest to the Debtor's former employer and asks the Court to deny the Debtor's discharge pursuant to § 727(a)(4)(A). The Plaintiff argues that the Debtor failed to disclose in his petition and schedules his interest in several assets, as is required. These assets include the book of business in which the Debtor acknowledged co-owning with his prior employer in the state court action. The Plaintiff also argues that the Debtor's conduct in assisting Gallina's actions in breaching his fiduciary duty to his employer and providing his employer's customer account information to a competitor requires the Court to find that the debt owed by the Debtor to the Plaintiff is non-dischargeable pursuant to §§ 523(a)(4) and (a)(6).

For the reasons that follow, the Court finds that the Debtor's discharge should be denied under § 727(a)(4)(A). The Debtor had a duty to disclose to the Court and his creditors his interest in the book of business he co-owned with his former employer. A finding that a debtor is not entitled to a discharge under § 727(a)(4)(A) would normally render a discussion of the § 523 causes of action unnecessary. The Plaintiff herein has not withdrawn the § 523 causes of action and the Court finds it important to examine how findings in a state court proceeding may impact a non-dischargeability action in the Bankruptcy Court. Dischargeability and § 523 are creatures of federal bankruptcy law, and the Bankruptcy Code provides the sole grounds for determining whether a judgment debt should be excepted from a debtor's discharge. In resolving an action pursuant to § 523 in the Bankruptcy Court, the findings in a state court proceeding regarding a debtor's conduct may be used to establish certain necessary elements in a non-dischargeability proceeding. Collateral estoppel may be appropriate to preclude the relitigation of issues already decided by another court of competent jurisdiction. In this case, several key points decided by

the state court, including the Debtor's conduct of appropriating assets belonging to his former employer for use by himself and his future employer, plus his assistance in helping Gallina do the same, satisfied certain elements of § 523(a)(6). The trial before this Court established the additional necessary elements so as to allow the court to find the Debtor's conduct was willful and malicious, which gives rise to a finding that the debt is non-dischargeable.

## Procedural History

On June 1, 2021, the Defendant filed a voluntary petition ("Petition") for relief under chapter 7 of the United States Bankruptcy Code and Richard Stern was duly appointed and qualified as the chapter 7 trustee. ECF No. 1.[1] On September 3, 2021, the Plaintiff, successor in interest to McKinnon Doxsee Agency, Inc. ("McKinnon") and Millennium Alliance Group, LLC[2] ("Millennium"), commenced this adversary proceeding. ECF No. 1.[3] On June 10, 2022, the Plaintiff filed a motion for partial summary judgment ("MSJ") with respect to the causes of action under §§ 523(a)(6) and (a)(4) and § 727(a)(4)(A). ECF No. 20. On July 11, 2022, the Defendant submitted a memorandum of law in opposition ("Opposition") to the MSJ. On July 15, 2022, the Plaintiff submitted a response to the Opposition. Thereafter, both parties submitted briefs addressing the sole issue of whether the Plaintiff, as transferee of claims previously held by McKinnon and Millennium, may seek to have such claims deemed non-dischargeable under § 523(a)(6). Pl.'s Br., ECF No. 27; Def.'s Br., ECF No. 28; Pl.'s Reply Br., ECF No. 29. On October 3, 2022, this Court issued a Memorandum Opinion holding that the Plaintiff, as the valid

---

[1] This ECF reference is to the Defendant's docket in the chapter 7 bankruptcy case.
[2] The Plaintiff purchased a majority ownership interest in Millennium from McKinnon, and as part of the purchase agreement, the Plaintiff obtained the "sole right to manage, defend and make all decisions" relating to the state court action against the Defendant and Gallina. Pl.'s Reply Br., ECF No. 29, ¶ 10-11. The Plaintiff thereafter sold its interest in Millennium but retained its right to maintain the state court action against the Defendant and Gallina.
[3] Unless otherwise noted, ECF references are to the adversary proceeding docket, No. 21-8136.

assignee and holder of the claims, may maintain the two causes of action under 11 U.S.C. §
523(a). ECF No. 30. An order was entered on November 7, 2022, denying the MSJ and a trial
date was scheduled. A trial was held on May 9, 2023, at which the Defendant testified. All
exhibits were stipulated into evidence. The parties subsequently filed post-trial briefs on June 30,
2023. ECF Nos. 37, 38. Thereafter, the adversary proceeding was marked submitted.

## Facts

The Defendant was employed as an insurance sales agent by MRW Group, Inc.
("MRW") from 1987 to 1993, where he developed a book of business ("Marklin Book"), in
which he and MRW each held a 50% interest. Compl., ECF No. 1, at 2, ¶10-11. Gallina
developed a separate book of business ("Gallina Book"), in which MRW and Gallina each held a
50% interest. Compl. at 2, ¶12 (the Marklin Book and the Gallina Book shall be referred to
collectively as the "Books"). In the insurance business a "book of business" is defined as a
compilation of customer names along with information regarding the insurance policies
purchased by each customer. This information includes the dates of insurance policies, the
amounts of insurance, the premiums, and a description of the covered property. *In re Est. of
Corning*, 488 N.Y.S.2d 477, 480 (App. Div. 3d Dep't 1985).

On September 1, 1993, McKinnon, owned at the time by its principal, James McKinnon,
contracted with Gallina, the Defendant, and MRW ("MRW Agreement") to purchase MRW's
50% interest in both the Marklin Book and the Gallina Book. Compl. at 2, ¶13. The aggregate
purchase price for the Books was approximately $260,000. Trial Transcript ("Tr.") at 14:2-5,
ECF No. 35. According to the MRW Agreement, the purchase of the Books included the
customer list and accounts, together with all original records pertaining to said customer
accounts. The records included, but were not limited to, applications, dailies, policies,

correspondence, memoranda, listing of billings and payments received, and losses. Pl.'s Trial Ex. A, at 1.

The percentage of commissions paid to the Defendant did not correspond to his 50% ownership of the Marklin Book.[4] Tr. 13:20-25, 14:1. On this same day, the Defendant and Gallina commenced their employment at McKinnon as insurance agents. Compl. at 2, ¶14. Also on this day, a handwritten agreement ("Danford Agreement") was executed by the Defendant and Gallina. Tr. at 16:1-11; Compl. at 2-3, ¶15; Pl.'s Trial Ex. C. The Danford Agreement provided that in the event either the Defendant or Gallina terminated their relationship with McKinnon, they would take ownership of the portion of the Books that McKinnon had purchased and would assume McKinnon's responsibility to pay MRW as well as reimburse McKinnon for any payments made to MRW. Tr. at 17:12-18; Pl.'s Trial Ex. C. The Defendant never entered into an employment agreement or a non-compete agreement with McKinnon. Tr. at 66:15-17.

At some point in time, James McKinnon considered forming a related entity that would act as an "umbrella" under which various insurance agencies could operate as member agencies, for the purpose of sharing expenses and increasing revenues. Tr. at 23:6-12. As a result, Millennium was officially formed in 1998 to act in this fashion. Compl. at 3, ¶16; Tr. at 25:14-18. McKinnon subsequently became one of the member insurance agencies of Millennium. Tr. at 24:1-3. In addition to working at McKinnon, the Defendant became the COO of personal lines at Millennium where he was responsible for hiring. However, he was eventually terminated from that position in 2006. Tr. at 24:22-25, 25:1-4; Pl.'s Trial Ex. D. Gallina was a member of

---

[4] For example, although the Defendant owned 50% of the Marklin Book, he did not receive 50% commissions. In fact, for some time, the Defendant's sales commission was fixed at 30%. Tr. 13:20-25, 14:1.

Millennium's Board of Directors. Tr. at 25:16-18. Despite his termination as COO of Millennium, the Defendant continued to be employed at McKinnon.

On December 4th, 2007, the Defendant and Gallina resigned from their respective positions at McKinnon and Millennium.[5] Tr. at 27:7-11, 20-21; Pl.'s Trial Exs. E, F, G. On this same day, the Defendant and Gallina became employed by AC Edwards Inc. d/b/a Edwards & Company ("Edwards"). Tr. at 70:5-9.

Approximately one month prior to leaving McKinnon to join Edwards, the Defendant and Gallina, without the consent or knowledge of McKinnon, made copies of some customer files, which included each customer's name, address, telephone number, policy information, carrier name, type of policy, and policy number. Tr. at 31:1-14, 32:6-23, 36:15-17. The files were provided to Edwards approximately two weeks prior to the Defendant's and Gallina's resignation. Tr. at 37:6-8. When asked at trial why he copied the customer information and provided it to Edwards, the Defendant testified that he did so to negotiate a commission structure for himself and to have Edwards prepare the "BOR" (broker of record) letters[6] so he could start earning commissions under Edwards quickly. Tr. at 37:20-24. Some of the BOR letters were dated prior to the Defendant's resignation on December 4, 2007. Tr. at 41:6-13. According to the Defendant's testimony, he owned 100% of the book of business upon his departure from McKinnon. Tr. at 52:17-20.

---

[5] The Defendant resigned as an employee of McKinnon; Gallina resigned as an employee of McKinnon and as a member of the Board of Directors at Millennium.

[6] A "broker of record" letter is a letter that is signed by an insured client and sent to an insurance carrier, indicating that the client wants to change its insurance broker. The current broker would then have between five to ten days to obtain a "countermanding broker of record," in which the current broker can contact the client and attempt to convince the client to remain with them. The insurance carrier will then pay commissions to whomever keeps the client. Tr. at 33.

In 2015, several years after leaving McKinnon, the Defendant and Edwards signed an employment contract. Tr. at 52:24-25, 53:1-3. It was at this time that the Defendant claims his 100% ownership in the Marklin Book was transferred to Edwards. According to the Defendant, Edwards currently owns the Marklin Book. Pl.'s Mot. For Summ. J., Ex. 3 at 45:9-14, ECF No. 20. However, Edwards paid nothing for the acquisition of the Marklin Book, and the employment contract contained no language effectuating a transfer of an interest in the Marklin Book to Edwards. Tr. at 53:21-25, 54:1-17; Pl.'s Trial Ex. I.

On December 10, 2007, McKinnon and Millennium brought an action against the Defendant and Gallina in the Supreme Court of New York, Nassau County (the "New York Supreme Court") seeking damages based on the following causes of action: (1) conversion, (2) breach of fiduciary duty, (3) aiding and abetting a breach of fiduciary duty, (4) unfair competition, and (5) a demand for an accounting. On December 23, 2016, the New York Supreme Court entered a decision finding that McKinnon and Millennium had not established any of their claims by a preponderance of the evidence and dismissed the complaint in its entirety. *Mckinnon Doxsee Agency, Inc. v. Gallina*, No. 022005-07, 2016 WL 9774707, at *1 (N.Y. Sup. Ct. Dec. 23, 2016).

On October 7, 2020, the Appellate Division, Second Department (the "Appellate Division") affirmed the New York Supreme Court's dismissal of the claim for conversion and demand for an accounting. However, it reversed in part and found Gallina liable for breach of fiduciary duty and the Defendant liable for aiding and abetting Gallina's breach of his fiduciary duty. Gallina and the Defendant were also found liable for unfair competition. *See McKinnon Doxsee Agency, Inc. v. Gallina*, 132 N.Y.S.3d 144, 146 (App. Div. 2d Dep't 2020) ("Appellate Decision"). The Defendant's wrongful diversion of contact information and information

regarding insurance policies for his benefit and to the detriment of his employer, plus the solicitation of customers prior to his resignation, constituted unfair competition under New York law. *Id.* at 149. In addition, the Appellate Division found that Gallina had a fiduciary duty as a member of the board of directors of Millennium and by his conduct, he breached that duty. Furthermore, the Appellate Division held the Defendant liable for aiding and abetting Gallina in his breach of fiduciary duties. *Id.* at 148-49.

On June 1, 2021, before a trial on damages could be held, the Defendant filed the Petition. In his schedules and statement of financial affairs, the Defendant failed to disclose the Marklin Book and his two licenses to sell various insurance products. The Defendant also omitted Ashley Funding Services, LLC as a creditor. In his schedules, the Defendant listed Gallina as a creditor, listed the Plaintiff with an "unliquidated claim" in the amount of $500,000, and claimed income from operating a business.

**Discussion**

### I.      Book of Business

Critical to any examination of the causes of action in this adversary proceeding is an understanding of the term "book of business." "In the insurance industry, the term 'book of business' . . . refers to a copy of the policy issued to the insured and contains 'the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and terms of insurance.'" *In re Est. of Corning*, 488 N.Y.S.2d at 480. This meaning corresponds to the description of the book of business contained in the MRW Agreement.

## II.      Denial of Discharge under § 727(a)(4)(A)

Section 727(a)(4)(A) of the Bankruptcy Code states, "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

To satisfy § 727(a)(4)(A), the plaintiff bears the burden of establishing each element by a preponderance of the evidence and must prove "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Pergament v. Gonzalez (In re Gonzalez)*, 553 B.R. 467, 473 (Bankr. E.D.N.Y. 2016) (quoting *Carlucci & Legum v. Murray (In re Murray),* 249 B.R. 223, 228 (E.D.N.Y. 2000)).

A debtor's petition, schedules and related statements are declarations made under penalty of perjury and therefore "constitute a statement under oath for purposes of § 727(a)(4)(A)." *In re Gonzalez*, 553 B.R. at 473-74 (quoting *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994)). "Omissions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes." *Republic Credit Corp. I v. Boyer (In re Boyer)*, 367 B.R. 34, 45 (Bankr. D. Conn. 2007), *aff'd*, 384 B.R. 44 (D. Conn. 2008), *aff'd*, 328 F.App'x 711 (2d Cir. 2009). Even "one single false oath or account is sufficient to deny a debtor's discharge." *TD Bank, N.A. v. Nazzaro (In re Nazzaro),* No. 10–8500 (REG), 2013 WL 145627, at *7 (Bankr. E.D.N.Y. Jan. 14, 2013).

In making its determination, "[c]ourts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *Bub v. Rockstone Capital, LLC*, 516 B.R. 685, 695 (E.D.N.Y. 2014) (quoting *Montey*

*Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993)). "A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth." *In re Gonzalez*, 553 B.R. at 474 (quoting *In re Maletta,* 159 B.R. at 112).

> In examining whether a debtor exhibits a reckless disregard for, or indifference to the truth, courts consider (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies.

*In re Gonzalez*, 553 B.R. at 474 (quoting *Gobindram v. Bank of India,* 538 B.R. 629, 638 (E.D.N.Y. 2015)).

A court may find that a debtor's acts constitute a reckless indifference to the truth and may infer fraudulent intent "from a series of incorrect statements and decisions contained in the schedules." *Bub,* 516 B.R. at 694. Once a plaintiff produces evidence that a false statement was made, the burden then shifts to the debtor to produce a credible explanation. *Virovlyanskaya v. Virovlyanskiy (In re Virovlyanskiy),* 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013). If the debtor fails to do so, a court may infer fraudulent intent. *Pergament v. DeRise (In re DeRise),* 394 B.R. 677, 691 (Bankr. E.D.N.Y. 2008). Lastly, a statement or omission will be considered material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Agai v. Antoniou (In re Antoniou),* 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014) (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)).

The Plaintiff alleges that the Defendant should not be granted a discharge for failing to list his ownership of the Marklin Book and his two licenses to sell insurance. The Defendant's failure to list a material asset, his interest in the Marklin Book, constitutes a false oath under §

727(a)(4)(A), as it directly relates to the Defendant's estate, discovery of assets, and disposition of his property. However, the Defendant's failure to list the insurance licenses does not provide grounds for denial of his discharge.

The record establishes that the Defendant owned 50% of the Marklin Book during the time he worked at McKinnon and upon his departure from McKinnon, he took ownership of 100% of the Marklin Book. The Defendant is an experienced insurance salesman and he has been in the insurance industry for years. The Defendant was personally involved in and was a signatory to the MRW Agreement which obligated him to compensate McKinnon if the Defendant took the Marklin Book. The Defendant never transferred any of his interest in the Marklin Book when he joined Edwards, so that interest remained with him on the date the Petition was filed. Whether that interest is 50%, or 100%, his failure to list his interest in this asset is significant.

The Plaintiff met its burden of establishing that the Defendant made a false statement, which creates a rebuttable inference of fraudulent intent. The Defendant has failed to rebut this inference. At trial, the Defendant testified that he owned 100% of the Marklin Book until he signed an employment agreement with Edwards in 2015. Tr. at 47:24-25, 48:1-3. According to the Defendant, the non-compete and confidentiality provisions "divested" him of his interest. The Court disagrees.

There is nothing in the record that indicates any purchase, sale, transfer or assignment of the Defendant's interest in the Marklin Book to Edwards. The Defendant even conceded that no document exists evidencing Edwards's alleged purchase of any portion of the Marklin Book. Tr. at 50:9-15. The Defendant also admitted at trial that in a prior deposition, he testified that he owned 50% of the Marklin Book and Edwards owned the other 50% prior to his contract with

Edwards. Tr. at 45:24-25, 46:1-5. The Defendant then immediately corrected his testimony to state that he owned 100% of the Marklin Book prior to finalizing an agreement with Edwards. Tr. at 46:16-25. He also admitted that he testified, in that same deposition, that he and Edwards had discussions about the purchase of the Marklin Book but produced no evidence demonstrating an actual purchase. Therefore, the Defendant retained an interest in the Marklin Book, which was not disclosed in the Petition. Accordingly, the Court finds that the Plaintiff has established that the Defendant made a materially false oath with fraudulent intent, and Defendant failed to rebut this finding with any credible evidence.

The Plaintiff also alleges that the Defendant failed to list his two licenses to sell insurance, as they are considered "professional" licenses required to be disclosed in his Petition. The Defendant possessed one license to sell property and casualty insurance, and another to sell life insurance. The Defendant acknowledged that he needs these licenses to work in the insurance industry, he held these licenses for almost forty years, he needed to pass examinations and re-certify every two years to maintain these licenses, and he did not disclose these licenses in his Petition. Tr. at 55:17-25, 56. The Defendant maintains, however, that he was not required to list these licenses because insurance brokers are not "professionals" and therefore, his licenses to sell insurance are not "professional licenses." Further, he argues he did not act with fraudulent intent because he did not believe he was required to disclose them. The Court agrees.

The law is unsettled as to whether licenses to sell insurance are professional licenses requiring disclosure in bankruptcy petitions. In some contexts, such as malpractice actions, insurance agents are not considered "professionals." *See Chase Sci. Rsch., Inc. v. NIA Group, Inc.*, 749 N.E.2d 161, 166-67 (N.Y. 2001) (holding that insurance agents and brokers are not "professionals" within the context of N.Y. C.P.L.R. § 214(6), after considering criteria such as

extent of formal learning and training, licensure and regulation requirements, whether a code of conduct imposes standards beyond those accepted in the marketplace, and whether a system of discipline for violation of those standards exists).

In other contexts, however, insurance agents and other similar occupations can be considered "professionals." *See Westchester Fire Ins. Co. v. Metro. Life Ins. Co.*, 721 N.Y.S.2d 14, 15 (App. Div. 1st Dep't 2001) (finding that the sale of life insurance was a professional service under a policy's professional services exclusion); *Cunningham v. Ins. Co. of N.A.*, 521 F.Supp.2d 166, 184 (E.D.N.Y. 2006) ("that New York law does not recognize 'professional malpractice' claims against insurance brokers . . . rests on a fundamental misreading of the law"); *David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co.*, 934 F.Supp.2d 533, 544-45 (E.D.N.Y. 2013), *aff'd*, 542 F.App'x 89 (2d Cir. 2013) (distinguishing *Chase* because of its limited context and choosing to apply the "common understanding of the term" in determining what constitutes a "professional").

Regardless of whether a license to sell insurance is considered a professional license, there was no discernable fraudulent intent in the Defendant's failure to disclose his licenses. At trial, the Defendant explained that he considered "professional licenses" to mean professionals such as doctors or lawyers. Tr. at 56-57. He also testified that he did not consider his licenses to be considered "professional." Specifically, he testified that he had previously attended an "errors and omissions seminar" and the lawyer presenting the seminar discussed cases where insurance agents were not considered professionals. Tr. at 73:1-4. The Defendant relied on this guidance and provided a good faith basis for his failure to list the licenses. While the failure to list the licenses alone would not warrant denial of the Defendant's discharge, this Court finds that the

Defendant's failure to disclose his interest in the Marklin Book provides adequate grounds to deny the Defendant's discharge under § 727(a)(4)(A).[7]

Before analyzing the remaining causes of action, the Court shall examine *res judicata* and collateral estoppel and their effect on the remaining claims.

### III.    Res Judicata and Collateral Estoppel

*Res judicata* "prevents litigation of all grounds for, or defenses to, recovery that were previously available to parties, regardless of whether they were asserted or determined in the prior proceeding." *Ling's Props. LLC v. Bode (In re Bode)*, No. 14-82802 (REG), 2015 WL 4594539, at *3 (Bankr. E.D.N.Y. July 30, 2015) (citing *Brown v. Felson,* 442 U.S. 127, 131 (1979)). However, "res judicata does not bar the bankruptcy court from deciding the issue of whether a debt is dischargeable, even when similar issues have already been decided by a state court of competent jurisdiction." *Margulies v. Hough (In re Margulies)*, 517 B.R. 441, 451-52 (S.D.N.Y. 2014). Collateral estoppel, however, can preclude certain issues from being relitigated. Collateral estoppel "bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding regardless of whether the two suits are based on the same cause of action." *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003) (citing *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 326 (1955)).

---

[7] In many cases, denial of a debtor's discharge would render a discussion of additional causes of action under § 523 unnecessary. Nevertheless, it is worthwhile in this case to rule on the §§ 523(a)(4) and (a)(6) causes of action brought by the Plaintiff. As discussed, the Appellate Division found the Defendant liable for (1) aiding and abetting Gallina's breach of his fiduciary duty, and (2) unfair competition, with damages to be determined. A finding of liability under these state law causes of action does not guarantee that debts arising from these claims will be non-dischargeable because they do not precisely match the requirements of §§ 523(a) (4) or (6). However, *res judicata* does not bar the creditor from seeking to have the debts deemed non-dischargeable, and collateral estoppel can preclude the relitigation of certain elements which were already determined in the prior non-bankruptcy proceeding. In this case, there are findings in the Appellate Decision which satisfy several elements of § 523(a)(6).

Under New York law, collateral estoppel applies when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007). The Defendant does not dispute that he had a full and fair opportunity to litigate the claims in state court. Nor is there any doubt that this Court is bound by the state court decision finding the Defendant liable for (1) aiding and abetting breach of fiduciary duty and (2) unfair competition. In New York, the elements constituting a claim for aiding and abetting a breach of fiduciary duty consist of (1) a breach of fiduciary duty, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages from the breach. *Off. Comm. of Unsecured Creditors v. Blomen (In re Hydrogen, LLC)*, 431 B.R. 337, 352 (Bankr. S.D.N.Y. 2010). In New York, unfair competition is found where a defendant "wrongfully divert[s] the plaintiff's business to itself." *Baldeo v. Majeed*, 55 N.Y.S.3d 340, 343 (App. Div. 2d Dep't 2017). To establish a claim for unfair competition based on misappropriation of confidential information in New York, a plaintiff must prove that "the defendant solicited the plaintiff's customers where the customer list was a trade secret, or where the defendant engaged in wrongful conduct." *Id.* This conduct includes "physically taking or copying files or using confidential information." *Id.* (quoting *Starlight Limousine Serv., Inc. v. Cucinella*, 713 N.Y.S.2d 195, 196 (App. Div. 2d Dep't 2000)). To the extent that the Appellate Decision contains findings relevant to elements of § 523(a)(6), the Court may adopt these findings in this decision.

## IV.        Non-dischargeability Under § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides that "[a] discharge . . . does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

"Willful" and "malicious" are separate elements with distinct meanings and both must be satisfied by a preponderance of the evidence. *Cocoletzi v. Orly (In re Orly)*, No. 16-01020 (JLG), 2016 WL 4376947, at *3 (Bankr. S.D.N.Y. Aug. 10, 2016) (citing *Rescuecom Corp. v. Khafaga (In re Khafaga),* 419 B.R. 539, 548 (Bankr. E.D.N.Y. 2009)).

The term "willful" means "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Willfulness is found where the debtor "knows that the consequences are certain, or substantially certain, to result from his act." *Myer's Lawn Care Servs., Inc. v. Fragala (In re Fragala)*, 645 B.R. 488, 499 (Bankr. E.D.N.Y. 2022) (quoting *Salim v. VW Credit, Inc.*, 577 B.R. 615, 625 (E.D.N.Y. 2017)); *see also DeCurtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 26 (Bankr. E.D.N.Y. 2015) ("Courts within the Second Circuit have found that if a debtor believes that an injury is substantially certain to result from his conduct, the debtor will be found to have possessed the requisite intent to injure required under *Geiger"*). Courts in the Second Circuit generally apply a subjective standard of intent to determine willfulness. *Owens v. Powell (In re Powell)*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017).

The term "malicious" has been defined to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti),* 94 F.3d 84, 87 (2d Cir.1996). As defined by courts in the Second Circuit, "malicious" conduct can involve actual or implied malice. *In re Khafaga*, 419 B.R. at 550 (citing

*In re Stelluti*, 94 F.3d. at 88). Generally, there are three types of conduct that can lead to a finding of malice, as the court in *Khafaga* explained.

First, some conduct may be inherently malicious. *In re Khafaga*, 419 B.R. at 550 (citing *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)). For example, assault may be inherently and patently malicious. *In re Luppino,* 221 B.R. at 700. Actual malice may also be an essential element of some causes of action, such as malicious prosecution. *Id.*

Second, there are instances where actual malice may be inferred or imputed, known as "implied malice," where "the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor." *In re Khafaga*, 419 B.R. at 550 (citing *In re Luppino,* 221 B.R. at 700). Malice may also be implied when "anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar),* 368 B.R. 120, 132 (Bankr. E.D.N.Y. 2007) (quoting *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005)). Implied malice is typically found where the behavior is of the kind that the court cannot justify on any level. *Whitaker Secs., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 76 (Bankr. S.D.N.Y. 2015).

Third, there are situations where the debtor's conduct giving rise to liability is clearly motivated by profit or gain or other benefit to the debtor. *In re Luppino,* 221 B.R. at 700. When this is the case, "the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit

decision in [*Stelluti*]." *Khafaga,* 419 B.R. at 550 (citing *In re Luppino,* 221 B.R. at 700).

Consequently, "an ordinary tort or breach of contractual or statutory duty generally is not

sufficient to deny discharge under subsection (6) without some aggravating circumstance . . . ."

*In re Luppino,* 221 B.R. at 700. Whether circumstances are sufficiently aggravating to support a

finding of malice is a fact-specific determination made on a case-by-case basis. *Wu v. Lin (In re*

*Qiao Lin)*, 576 B.R. 32, 43 (Bankr. E.D.N.Y. 2017). "A court should look to the totality of the

circumstances to determine malice." *Forrest v. Bressler (In re Bressler),* 387 B.R. 446, 455

(Bankr. S.D.N.Y. 2008).

In the instant case, the Defendant's conduct falls within the third category, as it was

clearly motivated by profit or gain. Therefore, this Court must find "additional, aggravating

conduct" by the Defendant sufficient to conclude that this debt is non-dischargeable under §

523(a)(6).

The Plaintiff has established that the Defendant's actions were both willful and

malicious. It is undisputed that approximately one month prior to his departure from McKinnon,

the Defendant, in contemplation of leaving McKinnon, began making copies of McKinnon

customer lists and providing these lists to Edwards, which in turn utilized the information to

prepare the BOR letters. These findings were detailed in the Appellate Decision and were

necessary elements of each cause of action for which the Defendant was found liable. The

Defendant conceded that the number of policies he copied were in the hundreds and that when

these customers agreed to switch to Edwards, they were no longer included as part of

McKinnon's book of business. Tr. at 39:4-8. Any income via commissions that would have

otherwise been McKinnon's now became the income of Edwards. The Defendant knew that his

conduct was substantially certain to result in economic injury to McKinnon, and therefore, his conduct was "willful" under § 523(a)(6).

The Defendant's conduct was also "malicious." The Defendant exhibited wrongful behavior by accessing the customer insurance information contained on McKinnon's computer, copying that information, and subsequently providing it to Edwards while still an employee of McKinnon. This wrongful behavior was necessarily determined in the Appellate Decision in connection with both causes of action. The BOR letters, which were introduced as exhibits at trial, which were dated prior to the date that the Defendant and Gallina resigned, and for which the Defendant "provided no specific explanation," are further evidence of the Defendant's improper conduct. Pl.'s Trial Ex. H; *McKinnon Doxsee Agency, Inc*, 132 N.Y.S.3d at 148-49.

The Defendant argues that even though he provided the client lists to Edwards, the clients could still choose whether they wanted to remain with McKinnon. The Defendant fails to acknowledge that whether the clients had a choice to either stay with McKinnon or follow the Defendant to Edwards is irrelevant. It is the knowing exploitation of his employer's assets for his benefit that gives rise to a finding of malice. The Defendant's misappropriation of the customer lists and information which made up the Marklin Book had two components: (1) the transfer to Edwards was for the Defendant's benefit and (2) the transfer harmed McKinnon. This is what takes the Defendant's conduct beyond a breach of contract or simple tort action and provides the additional aggravating conduct that is required for a finding of malice.

In his defense, the Defendant argues that even if the other elements of § 523(a)(6) are met, his 50% ownership of the Marklin Book constitutes "just cause or excuse" for his conduct. Def.'s Post-Trial Br. at 9. The Defendant rationalizes that since he owned half of the Marklin Book, he had the right to copy the customer lists which contained all relevant policy information and provide

it to Edwards for the purpose of negotiating his employment. That argument fails as a matter of law.

The Defendant's partial ownership of the Marklin Book is immaterial to the fact that he knowingly misappropriated McKinnon's assets and provided them to a competitor. Whether the Defendant owned 1% or 100% of the customer information comprising the Marklin Book, he intentionally copied the information without his employer's knowledge, he transferred that valuable information to a competitor, and that competitor used that information for its own benefit, to the detriment of McKinnon. The Defendant also did so without reimbursing McKinnon pursuant to the Danford Agreement. Tr. at 17:25, 18:1-3. The Defendant's explanation also does not excuse his conduct in aiding and abetting Gallina's breach of his fiduciary duty. The customer lists and insurance information comprising the Gallina Book were assets that belonged to McKinnon, so there could be no "just cause or excuse" in helping Gallina transfer this information to Edwards.

This is not a case where a debtor fails to pay one creditor in favor of another, breaches a contract or infringes on a copyright patent. *See Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138 (Bankr. S.D.N.Y. 1998) (while a breach of a franchise contract and copyright and trademark infringement would not give rise to non-dischargeability under § 523(a)(6), sanctions awarded based on the blatant violation of a court order specifically enjoining the debtor from continuing to breach the franchise agreement would render the sanctions award non-dischargeable). *Blankfort* highlights the distinction between debts that fall within § 523(a)(6) and debts that do not. The Defendant's conduct is not equivalent to an ordinary breach of contract action. The record at trial supports a finding that the Defendant misappropriated his employer's assets by copying its valuable information and providing it to a competitor company and

proffered no justification for his actions. The Defendant's conduct, when considered in the context of federal bankruptcy law, is sufficient to satisfy § 523(a)(6).

Therefore, the Defendant's actions were willful and malicious, and this debt is non-dischargeable under § 523(a)(6). While the dollar amount of this debt has not been fixed, any judgment emanating from the state court action will be non-dischargeable.

### V.      Non-dischargeability Under § 523(a)(4)

Under § 523(a)(4), a debt is non-dischargeable if it is one "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To prove non-dischargeability under this subsection, the Plaintiff must show that "(1) an express [or technical] trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the [plaintiff] at the time the debt was created." *Palisades Tickets, Inc. v. Daffner (In re Daffner)*, 612 B.R. 630, 651 (Bankr. E.D.N.Y. 2020).

The term "fiduciary duty" is not defined in the Bankruptcy Code. Courts within the Second Circuit define "fiduciary duty" narrowly in the bankruptcy context: "[t]he broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)(4)." *Presbyterian Home for Cent. N.Y. Inc. v. DeFazio (In re DeFazio)*, No. 20-80009-6, 2022 WL 2288242, at *3 (Bankr. N.D.N.Y. June 23, 2022) (citing *Zohlman v. Zoldan*, 226 B.R. 767, 772 (Bankr. S.D.N.Y. 1998)). An employee/employer relationship alone would not create the necessary fiduciary relationship for purposes of § 523(a)(4). *Grow Up Japan, Inc. v. Yoshida (In re Yoshida)*, 435 B.R. 102, 110 (Bankr. E.D.N.Y. 2010) (other citations omitted).

In this proceeding, the only allegations supporting a finding under § 523(a)(4) are conclusory statements contained in the complaint. The record, as well as the Plaintiff's

submissions to the Court, are otherwise devoid of any discussion of the Defendant's liability under this section. The record before this Court is insufficient to support a finding that a fiduciary relationship existed between the Defendant and the Plaintiff. Therefore, this cause of action seeking to have the debt deemed non-dischargeable under § 523(a)(4) is dismissed for the Plaintiff's failure to establish a *prima facie* case.

**Conclusion**

For the foregoing reasons, the Court finds that the Plaintiff has satisfied its burden of showing, by a preponderance of the evidence, that the Defendant is not entitled to a discharge pursuant to § 727(a)(4)(A). Furthermore, the debt owed to the Plaintiff is non-dischargeable pursuant to § 523(a)(6). The Court shall enter judgment consistent with this Decision.



Dated: Central Islip, New York
September 27, 2023

Robert E. Grossman
United States Bankruptcy Judge